Good morning, your honors. May it please the court, Ashwini Mate representing Valerie Bogomolny, and I'd like to reserve two minutes of my time for rebuttal, if I may. Your honor, I'd like to clarify at least two parts of the instructional error argument to start with. The first is that, and to be absolutely clear, instruction 14, standing alone, was not a correct statement of law. It instructed the jury to substitute every and in the only referred to the indictment. It didn't say every time I say in these instructions and it means or. It referred to the indictment, but the indictment actually conjoined the mens rea clause with ands as well. I understand that. And so the error still exists, if they had the indictment in front of them, and the indictment joined the mens rea clause with ands. I understand, but he then instructed with and, the knowing and intent. They then instructed with knowingly and intent. And he didn't say when I say and, I mean or. Right, and it wasn't clearly. So therefore, what's the problem? Well, the substantive elements instruction was also a clarification of what the indictment said. That's how it was phrased. And instruction 14 wasn't necessarily just limited to the indictment. It also discussed the government's burden of proof at trial. It said the government only has to prove these things in the disjunctive. And then when. Object to this at trial. We did not, Your Honor. So I've got to find your argument. So convincing that it is plain error. Your Honor, this, this question presents a pure question of law. Whether or not. I'm being very, being very straight with this. Whether it's a question of law or whether it isn't. If you don't object, then I've got to have plain error in this instruction. Well. And frankly, my colleague has asked you the two good questions about this particular thing. Which I don't see how that can be plain error, given those two questions. So you've got to tell me why. Instruction 14 is plainly an incorrect statement of law. It is taken out of context from the Bonanno case. It state, it instructed the jury to switch out every ant for an oar in the indictment, but also discussed how that affected the government's burden of proof. It was followed by the substantive elements instruction, which stated that it was clarifying what the indictment said. But it's not just what the indictment said. It's the ways, that's the word that's used in instruction 14, the ways in which the offense is committed. And the ways would more naturally relate to the specific instances given in the indictment, and not the culpable mental state. Would it not? I would disagree, Your Honor. There's nothing to, there's no reason to believe that a lay juror would understand several ways to only be tied to the action and not the mental state. There's no reason to think that any juror would have put these two things together in the way that you're suggesting they would have put it together. Again, the instruction 14 standing alone is still an incorrect statement of law. It does not state, so the principle of law the government relies on for this, is that when a statute denounces two or more ways in which an offense may be committed, all may be alleged in the conjunctive, and in one count, and proof of any of those acts as the instruction given says that the government didn't have to prove that your client violated 18 U.S.C. 1347 in both possible ways, but I don't see how that applies to the conjunctive phrasing of the mental state in the later instruction. Well, I think I understand Your Honor's question correctly. You don't believe that instruction 14 is connected to instruction 15, which is a concepts and developments instruction that follows right away. But the way that this was read to the jury was instruction 14 immediately preceded instruction 15. In fact, I think instruction 15 compounded the error, because the only clause that was joined by and was the mens rea clause. Just before having been the jury heard, well, everywhere that it says and, you can replace that with an or in the indictment, and then here's what the indictment says, knowingly and willfully. Tell me, let's change the focus a little. On what construction of the facts did Mr. Bohol, Mone, know but not willfully do this? I think the facts presented here actually prove that he was at best deliberately indifferent to the truth of what was happening in his company. Well, that's not knowingly. That's, that is knowingly. It's defined as knowingly. Yeah, it's deliberate indifference, sorry, is the dual standard for knowingly, but it's not, it does not amount to knowingly. I think the agents here testified that, yes, there was no evidence that he paid anyone off. There was no evidence that he had any direct communications with anyone. But now, I mean, unlike the other case that we just discussed, he, in fact, owned the place and ran it. Right. He owned it and ran it, but. No, so you, so the alternative explanation has to be that somebody, people working for him were doing this without him knowing it. Right, which is the explanation. Or, or wanting it. Correct, which is the explanation that was provided at trial. It was precisely what was argued by defense counsel. So the harmlessness standard is that there has to be such overwhelming evidence of willfulness that this error in the jury instruction could not have affected the jury verdict. Right. It's not overwhelming. It's more likely than not. I think in Meador versus United States, they said that it had to be overwhelming, that the evidence of willfulness had to be so overwhelming and that the omitted element was uncontested, which it is, was directly contested here. In fact, the entire defense case was whether or not Mr. Bogomolny had personally and willfully directed the fraud and that the evidence had to be so overwhelming. And in this case, I don't, I don't think that it meets that standard. And this is different from the sufficiency of evidence standard that, you know, you were discussing in the previous case where you make all reasonable inferences in favor of the government. Here, the government's evidence has to be, you know, so sufficient, not so sufficient, sorry, so overwhelming such of willfulness that, that it, that it's okay. Well, it seems to me that on a plain error argument, you're asking me to conclude that the jury would take an instruction clearly relating to the indictment and apply it to the jury instruction outlining the elements of mental care, mental, of health care fraud. That seems to me your argument. Your Honor, if we could turn to the instructions, they're on ER 10 and 11. I did. I think that it says. But are you going to answer my question or you're not? And the honest truth is, I don't know how to get past the idea that you're asking me to conclude that the jury took the instruction clearly relating to the indictment and applied it to another instruction relating or outlining the elements of health care fraud. Because even if the jury instruction took that one instruction number 14, as to the indictment alone, it was still wrong. It is still plain error under this circuit's precedent to instruct the jury to substitute every and in the indictment for it. But the health care fraud instruction clearly states that the defendant must commit the crime knowingly and willfully. And it also states that these elements are a clarification of the indictment. The original three sentences of that substantive elements instruction say, as charged in the indictment, this is what you need to find. And so the substantive elements instruction was also tied to the indictment. I'm sorry. Where is that? This is on ER 11. Wait a second. The defendant is charged in counts 1 through 6 with health care fraud. In order for the defendant to find guilty, the government must prove each of the following elements beyond a reasonable doubt. Where does it say anything about as charged? It says the defendant is charged in counts 1 through 6 of the indictment, and then it clarifies how they can find them guilty under that indictment. Right. And doesn't say anything about as charged. But, I mean, it ties it to the indictment by that language. And the previous instruction, again, goes back to the government's burden of proof under the indictment, which is, again, what these elements are supposed to describe. And it asks them to substitute every and for an or. I think it's a stretch to believe that a juror wouldn't know the difference between the indictment statements and what's stated here, which is, again, modified as to the indictment. Let me ask you, what is the significance of the circumstance that the instructions were jointly submitted? Does that put it in a different box than the government submitting them and the defendant not objecting to them? So, Your Honor, I think what I understand is you asking whether or not we invited this error. And the law in this circuit is that in order for a jury instruction to be tantamount to invited error, there has to be something clear in the record to show how much input the defendant gave in the crafting of those instructions. Now, as you can see from the government's excerpt of records, and I apologize for not personally submitting the jointly proposed jury instructions, the government crafted these jury instructions and we signed on to them. Or the defense attorney at the time signed on to them. And so in United States v. Ward, this circuit clearly held that when there is no clear evidence about how much input the defendant gave into the crafting of those instructions, that the other standards of review should apply, i.e., either plain error or de novo. And I would argue that even under the plain error standard, I think where it completely misstates the law in the Bonanno case, that that is a clear and plain error. And I think it's a stretch to ask that a jury would understand. Well, the stretch is that you want me to take the instruction that is, or the jury will ignore its instructions, to take the jury instructions as they are and do what they have to do, and then take the language in one instruction and automatically impose it on another instruction that doesn't say the same thing at all. I think when they're... It says, knowingly and willfully. The defendant knowingly and willfully participated in a scheme or plan. And five sentences prior to that, they're instructed to substitute every and for or in the indictment, but then this is meant to be a clarification of what the indictment says. Again, these are lay jurors. Their understanding of the difference between the substantive elements instruction and the indictment is probably... Well, in fact, it isn't a clarification of what the indictment says, because the elements that are listed are not in the indictment, the rest of them. Right? Sorry. Say that again, Your Honor? In other words, this instruction, 15, is going beyond the indictment. It's laying out the elements of the crime. I would argue that it's laying out the elements of the crime as described in Counts 1 through 6 of the indictment. And so, by... In other words, the indictment has all this stuff in it, everything that's in this list here? The indictment does have all this stuff in it. If we would, if you want, if the it actually says, all of this information, beginning on or about January 1st, 2006, and continuing through October 2009, in Los Angeles and elsewhere, defendant, together with others, known and unknown, knowingly, willfully, and with the intent to defraud, executed and attempted to execute, and it lists all the other various, the actions that were required for this crime that are also listed in the substantive elements instruction. So everything that is in that substantive elements instruction is also in this indictment. And this is how this was being read to this jury, one right after another. You have to turn everything that's an and into an or in the indictment, and the indictment clarifies these elements as follows. And this very, very terrible thing that you're saying happened, nobody objects at trial. Nobody objects to the instructions. Nobody says anything about it until we get on appeal, and all of a sudden, it's plain air. Your Honor, I think because the context of the language was taken, the language that was taken, or put, placed into instruction 14, excuse me. Well, but just a minute. Are you suggesting that counsel didn't have a right, a chance to object? I'm not suggesting that. All right, so they didn't object. And all I was pointing out to you is, first of all, I've got a standard to review. And after I've got a standard to review, then I have an instruction that says the jury's supposed to do what the judge tells them to do. And the judge gives them an instruction that is dead on what the indictment suggests, and then gives them another instruction that's different from that instruction. And you're suggesting, on plain air review, I've got to take one instruction that's given before and adopt the language of that into the second instruction. And I'm having a tough time on plain air review doing that. And I can't find yet a good answer for why I should have an easy time. Your Honor, I think that the answer, again, is the same one I've given you. And so I understand that. OK, well, then there's no reason giving me any more. All right. But your time is up. And we'll give you a minimum rebuttal. Thank you. May it please the Court. Jeremy Sanders on behalf of the United States. Your Honors, Valerie Bogomolny was convicted by a properly instructed jury after a fair trial for engaging in a scheme to defraud Medicare by submitting false and fraudulent claims for durable medical equipment that was either medically unnecessary or never provided. There was no error in his trial or the calculation of his sentence. And all the claims to the contrary are waived entirely, reviewable only for plain error or meritless. Now, it appears that the Court was mostly focused on the jury instruction issue. I'm happy to answer questions on any of the issues we briefed, but I'll start with that one. I want to focus first on the standard of review. I think there was some considerable discussion in my colleague's presentation. The appellant has argued in his reply brief that standard of review should be de novo because this is a plain question of law. However, I note that the case in which the defendant relies on Gonzales-Aparicio, in fact, applied the plain error standard of review, did not apply a de novo standard strictly because, in the words of the Court, it's only when there's a question of law that doesn't cause prejudice to the other party. And there, the Court said, had the issue been raised below, the government could have put on additional evidence. Our case law is confused about this, about whether there is something besides plain error when there is a question of law. If you're a question of law, I understand what you're saying. I think we've, we have, I mean, it could be something we need to a little bit confused. Well, I think there was also a question of whether this being a jointly proposed instruction changes the analysis some way. I think I will agree with my counsel that the government did not argue here that it was invited error, such that it's not reviewable at all. I think that's because it wasn't clear that this sequencing problem that the defendant now claims on appeal was, you know, made aware to the parties below. But had it been, the Court or the government could have fashioned the instructions in some other way to alleviate it. But your point seems to be that it couldn't have been so plain because the defense attorney agreed to it. Certainly, I would agree with that. And I think the most important thing that I want to point to is, if I could direct your attention, Your Honor's attention to the supplemental excerpts of record at 79 through 81. These are the copy of the jury instructions that went back to the jury room with, and in that instance, the instruction 14, the so-called conjunctive instruction, appears on a completely different page, refers where there are references to other aspects of the indictment, such as whether the government has to prove on or about a particular day or approximate amounts of claims to Medicare. Instruction 15, which sets out the elements of health care fraud, is again in a separate instruction. And so it's somewhat misleading when it's read on the record or when it's recited in the defendant's opening brief as sort of one straight instruction. It wasn't. And I think that that belies any indication that the jury would have confused the elements that are required in, or excuse me, in the instruction, in instruction number 14, which I would disagree with the defendant here. It is an accurate statement of the law. And in fact, it accurately explains that the government is, the government is obligated to prove, excuse me, can prove that the defendant committed health care fraud in one of two ways, by either executing a scheme to fraud or by submitting false and fraudulent documents in an effort to obtain money from Medicare. And so that is an accurate statement of the law. And instruction 15 was an accurate statement of law, that the government was required to prove that the defendant acted both knowingly and willfully in execution of the scheme. And those instructions on the elements of health care fraud, the knowingly and the willfully instructions, track the Ninth Circuit model jury instruction. So there's no claim by the defendant here on appeal that those inaccurately state the law. But I think the instruction 15 also makes clear, as was read to your honors a moment ago, that the government must prove each of the elements beyond a reasonable doubt. And then it includes both the terms knowing and willfully. So again, that would dispel any confusion if there were any from the previous instruction that the government was required to prove both mental states. And I think even were there any confusion in the instructions, the government has demonstrated that on plain error review, there was more than sufficient evidence for a jury to conclude that the defendant acted willfully. You don't make a harmless error argument. I'm sorry? You don't make a harmless error argument if this instruction error was correct? Well, because the test isn't harmlessness under plain error review. It's whether... Well, but do you make, I mean, a substantial, whatever it's called. Sure. I believe that under the third prong of the Alano test, whether there was prejudice to the defendant's substantial rights would subsume. But I'm asking whether in your briefs, did you make that argument? We made that argument in our briefs, yes. In fact, that there was evidence of willfulness here in many different ways. Principally, as this Court noted in Awad, where in that case, the jury was incorrectly instructed on willfulness. In fact, it was instructed on the complete opposite. And the Court affirmed the conviction anyways, because it found that there was substantial evidence in the record to support a jury's finding of willfulness. Specifically, that the defendant signed certifications that submitting false information could subject him to criminal liability, and yet submitted claims for respiratory treatments that were not performed anyways. The same is true here. There is evidence in the record, Government Exhibit No. 4, which is at S.E.R. 144, and Government acknowledged on Royals Medicare provider applications, that misrepresentations in supplying evidence to, information to Medicare. You're, as a standard, you don't agree with this overwhelming evidence notion. You say sufficient evidence. She says overwhelming evidence. It seems to me the truth is somewhere in between. Correct. I disagree that the standard is that, as it would be. So you're hitting, in your brief, says they introduced sufficient evidence. Maybe that's a wiggle, or it means sufficient for these purposes. But, it's somewhere more than a sufficiency of the evidence standard, but somewhere less than. Well, it's certainly not that we would have to show overwhelming evidence, or, as noted in the previous case, if it's a review for, there's been no claim of insufficient evidence being presented, that it's such that it must be any rational juror must conclude. Under the plain error test, it's whether there was an impact on his substantial rights. And as this Court concluded in AWAD, there was not, because of the evidence of willfulness. There was other evidence of willfulness in the record. What about this thing about the juror, which she didn't discuss? I gather that the government's main argument there is essentially that the, it is sort of an invited error argument, if it's an error, that is that the, the trial counsel essentially, specifically said she didn't want a hearing. That's correct, Your Honor, involving the courtroom conduct of the defendant's brother, Felix, in this case. That is, is true. In contrast to what we were talking about earlier with invited error, here the record clearly demonstrates that under this Court's standards set forth in Perez, this was a intentional relinquishment of a known right. Well, I have a little fuzzy. She said I'll get back to you, and she didn't. So, it kind of went, went up in the air at some point. Well, I think that it's more than just I'll get back to you. I mean, there was a, a discussion of defense counsel on the record about, oh, well, there's certain alternatives that we can do here, and one is we could voir dire the jury, but I'm not so sure that's a great idea, because it could cause more problems, and, but maybe we should just keep quiet, and, and I want to get back to you. The district court twice said he was comfortable with any approach defense counsel wanted to present to them. So, the fact that... But the parties wanted to present to him. Correct, correct. And I think it wasn't discussed again on, on that record. It's clear that the district court can't be faulted for failing to sua sponte, voir dire the jury, when there was an express indication from defense counsel, as there might have been some negative repercussions from that. So, in that respect, I think the district court acted reasonably. And certainly, this claim was not reviewable because of the invited error. Was there a misstatement by the government in its closing argument with regard to what the passports showed, the two passports? No, I don't believe there was a misstatement in the evidence with regard to the passports. The passports are included in the supplemental excerpts of record at SER 341 and 347. The jury had those available to them. I think, you know, there was, as, as borne out in the reply brief here, a disconnect between the parties initially in our, in our first two briefs as to what exactly the complaint was regarding the passports. The government initially, in its answering brief, assumed that it was the argument that was presented below that was actually the only thing that was objected to by defense counsel in the, in the summer, in the closing argument, which was that there was no evidence that an Immigration Customs official or Customs and Border Patrol didn't stamp his passport on his return to the country. In the defendant's reply brief, he makes clear, no, that's not the argument that's being made versus on prosecutorial misconduct. It's that the prosecutor directly, excuse me, misstated that there was no evidence to support Mr. Bogomolny's claim that he was not in the country when, in fact, there were these passports. And I would point the court, this is a case not cited by either party, Menendez v. Terhune, 422 F. 3rd, 1012. Very similar situation where the claim of prosecutorial misconduct was there's no evidence that the defendant had been sexually abused here when, in fact, the court, the defense had put on such evidence. The, the court in that case recognized that there, the prosecutor was offering argument as to how the jury should interpret the evidence. And here, as the closing argument made clear, they, the juror, the prosecutors told the jury, you will have these passports. You, it's up to you to determine to them. But they're inconclusive. They're stamps. It's hard to read. And in that respect, given that interpretation, the, the fair way to read the comments made by the prosecutor was, in fact, that there was nothing given the inconclusive nature of the passports that supported his testimony. He was not in the country. Okay. Your time is up. Thank you very much. Your Honors, I'd just like to clarify for the record that I don't believe a review of the instructional error should be for plain error. I do believe that this court's law, this circuit's law, states that this court can review a pure question of law de novo, and that the issue of whether or not an instruction is proper under the law, and the fact that they never said that where a statute denounces certain things in the disjunctive, the government can then prove them disjunctively even if they're charged conjunctively, misrepresented what, indeed, the government's standard of proof was for the mens rea in this case. And secondly, as to the issue of the Remmer hearing, which Your Honor raised. The asserted error of law is because this is a mens rea. I mean, in general it is true, is it not, that if it's cited, if it's alleged in the conjunctive, they can prove it in the disjunctive? Right. Only where the statute denounces it in the disjunctive to start with. So it starts with the statute itself. And as long as the statute denounces, in most cases, certain actions disjunctively, the government can then charge them conjunctively. I understand. So in this case, there was none of that clarification. And the statute in this case does not charge the mens rea disjunctively. So in and of itself, standing alone, Instruction 14 is not a correct statement of law. And with that, Your Honor, since my time is up. Thank you very much. Thank you both for your arguments in United States versus Bocamoni. And we will take a short break. Thank you. All rise.
judges: Berzon, N.R. Smith, Castel